UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                    PLAINTIFF

v.                                    CIVIL ACTION NO: <u>3:19-cv-180-CHB</u>
                                                      *Electronically filed*

CONTENTS OF ACCOUNT ENDING 5515
IN THE NAME OF SEA HORS LLC AUTOMAX
OF LOUISVILLE SUPERCENTER II,
HELD BY FIFTH THIRD BANK,
1841 BLANKENBAKER PARKWAY,
LOUISVILLLE, KY ($44,318.00); and

CONTENTS OF ACCOUNT ENDING 5507
IN THE NAME OF SEA HORS LLC AUTOMAX
OF LOUISVILLE SUPERCENTER II,
HELD BY FIFTH THIRD BANK,
1841 BLANKENBAKER PARKWAY,
LOUISVILLLE, KY ($303,777.00)                               DEFENDANTS

## VERIFIED COMPLAINT
## FOR FORFEITURE IN REM

The United States of America, by counsel, Russell M. Coleman, United States Attorney

for the Western District of Kentucky, and Amy M. Sullivan, Assistant United States Attorney, of

counsel, brings this complaint and alleges as follows:

### NATURE OF THE ACTION

1.      This is an action to forfeit and condemn to the use and benefit of the United States

of America the following property:   Contents of Account number ending 5515 in the name of

Sea Hors LLC Automax of Louisville Supercenter II, held by Fifth Third Bank, 1841

Blankenbaker Parkway, Louisville, KY ($44,318.00) and Contents of Account number ending

5507 in the name of Sea Hors LLC Automax of Louisville Supercenter II, held by Fifth Third

Bank, 1841 Blankenbaker Parkway, Louisville, KY ($303,777.00).

## JURISDICTION AND VENUE

2.      Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendant property under 18 U.S.C. § 981(a)(1)(C).   This Court has jurisdiction over forfeiture actions commenced by the United States pursuant to 28 U.S.C. § 1345 and 28 U.S.C. § 1355(a).

3.      This Court has *in rem* jurisdiction over the defendant property under 28 U.S.C. § 1355(b).   Upon filing this complaint, the plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

4.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1355 and 1395, because the defendant property was found in the Western District of Kentucky and because the acts or omissions giving rise to the forfeiture occurred in this district.

## THE DEFENDANT(S) IN REM

5.      The defendants are:   Contents of Account number ending 5515 in the name of Sea Hors LLC Automax of Louisville Supercenter II, held by Fifth Third Bank, 1841 Blankenbaker Parkway, Louisville, KY ($44,318.00); and Contents of Account number ending 5507 in the name of Sea Hors LLC Automax of Louisville Supercenter II, held by Fifth Third Bank, 1841 Blankenbaker Parkway, Louisville, KY ($303,777.00).   On or about September 21, 2016, pursuant to seizure warrants, Special Agent Andrew M. Phillips of the Federal Bureau of Investigation ("FBI") seized the defendant funds at the above-referenced financial institutions. The FBI began administrative forfeiture proceedings against this property, during which Hatem D. Kaisi, Nisreen Ajlouni Myaser Kaisi, and Maged Baker filed the only claims (received by FBI on or about December 21, 2016).   By several agreements between the United States, the

2

claimants and their counsel, Scott C. Cox and John H. Harralson III, the deadline to file the Verified Complaint has most recently been extended to March 14, 2019.  Defendant funds seized from accounts ending 4113 and 1841 are currently being held in the Asset Forfeiture Fund by the United States Marshals Service.

## THE LAW

6.    Pursuant to 18 U.S.C. § 1343, it is unlawful to devise or intend "to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice . . .".

7.    Pursuant to 18 U.S.C. § 1028, it is unlawful to "knowingly transfer, possess, or use, without lawful authority, a means of identification of another person....".

8.    Pursuant to 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of  . . . any offense constituting a 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense" are subject to forfeiture to the United States.

9.    Pursuant to 18 U.S.C. § 1956(c)(7) and 18 U.S.C. § 1961(1)(B), identity theft and wire fraud (18 U.S.C. §§ 1028 and 1343 respectively) constitute specified unlawful activities.

## SUMMARY OF RELEVANT FACTS

10.    The facts and circumstances supporting the seizure and forfeiture of the defendant property are set forth in the affidavit of Special Agent Andrew M. Phillips of the FBI, which is attached hereto as Exhibit "A", and incorporated in its entirety herein by reference.

3

## CLAIM FOR RELIEF

The defendant property represents proceeds traceable to identity theft and wire fraud, and as such, is forfeitable to the United States in accordance with 18 U.S.C. § 981(a)(1)(C).

WHEREFORE, the plaintiff respectfully requests:

1.    that the Court issue a warrant for the arrest and seizure of the defendant property;

2.    that notice of this action be given to all persons known or thought to have an interest in or right against the property;

3.    that the defendant property be forfeited and condemned to the United States of America;

4.    that the plaintiff be awarded its costs and disbursements in this action; and

5.    for such other and further relief as this court deems proper and just.

Respectfully submitted,

RUSSELL M. COLEMAN
United States Attorney

s/*Amy M. Sullivan*
AMY M. SULLIVAN
Assistant U.S. Attorney
Western District of Kentucky
717 West Broadway
Louisville, KY 40202
(502) 582-5911

4

## VERIFICATION

I, Andrew M. Phillips, am a Special Agent with the Federal Bureau of Investigation. I have read the foregoing Verified Complaint for Forfeiture *In Rem* (including any attachments thereto) and under penalty of perjury, hereby assert that the facts contained therein are true to the best of my knowledge and belief, based upon knowledge possessed by me and/or on information received from other law enforcement agents.

SA Andrew M. Phillips, FBI

Dated: 3/13/2019

Subscribed and sworn to before me this 13th day of March, 2019.

Notary Public

My Commission expires: 11/29/2022

5

## AFFIDAVIT IN SUPPORT OF CIVIL FORFEITURE COMPLAINT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I, Andrew M. Phillips, having been duly sworn, do hereby depose and state as follows:

### I.   INTRODUCTION

1.  I make this affidavit in support of a civil forfeiture complaint against the following financial

    accounts, which I have probable cause to believe contained proceeds traceable to criminal

    activity:

    a.      Contents of checking account number ending 5515 ($44,318.00), held by Fifth

            Third Bank in the name of Sea Hors LLC Automax of Louisville Supercenter

            II located at 1841 Blankenbaker Parkway, Louisville, Kentucky 40299; and

    b.      Contents of checking account number ending 5507 ($303,777.00), held by

            Fifth Third Bank in the name of Sea Hors LLC Automax of Louisville

            Supercenter located at 1841 Blankenbaker Parkway, Louisville, Kentucky

            40299.

2.  There is probable cause to believe Hatem D. Kaisi (KAISI) significantly underreported

    income he received from Automax Car Sales, LLC (Automax) and Preston Hwy Cars &

    Truck, LLC (PHCT), both S-Corporations owned by KAISI, by knowingly possessing,

    transferring, and using the means of identification of other persons, including name and

    social security number, without lawful authority, in violation of 18 U.S.C. § 1028.

3.  There is probable cause to believe KAISI and John Isaacs (KAISI's accountant) caused the

    preparation and/or filing of false federal tax returns, specifically Schedules K-1,

    electronically using wire communication, in violation of 18 U.S.C. § 1343.

1

4. For the reasons stated herein, there is probable cause to believe that such monies are subject to forfeiture to the United States, on the ground that they constitute property derived from identity theft (18 U.S.C. §1028) and Fraud by wire (18 U.S.C. § 1343).

5. I am a law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, that is, an officer of the United States empowered by law to conduct investigations of and make arrests for offenses enumerated in 18 U.S.C. §§ 1028 and 1343. I am also a "Federal Law Enforcement Officer" within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure.

6. I am a Special Agent with the Federal Bureau of Investigation (FBI) assigned to the Louisville Field Office. I have been a Special Agent of the FBI since July 2003. I have been involved in the investigation of numerous types of offenses against the United States, including Financial Institution Fraud, Mortgage Fraud, Tax Fraud, Immigration Fraud, and the illegal structuring of financial transactions and the use of these financial transactions to promote fund raising or to lawfully engage in monetary transactions involving the proceeds of specified unlawful activity, commonly referred to collectively as Money Laundering.

7. In the course of conducting and participating in criminal investigations, I have been involved in interviewing and debriefing informants; interviewing witnesses; conducting physical surveillance; the consensual monitoring and recording of conversations; and preparing and executing search and arrest warrants.

2

8. The facts and information contained in this affidavit are based upon my personal knowledge and derived from any or all of the following sources: subject's bank account records obtained by valid legal process from a custodian of records, information obtained from victim interviews and their records, witness interviews, confidential source interviews, law enforcement agency employees and their reports, and/or my own training and experience. I have personally reviewed reports and evidence supporting the information contained in this affidavit.

9. This affidavit is intended to show that there is probable cause and does not purport to set forth all of my knowledge or investigation into this matter. The accuracy of information with times and dates referenced herein is limited to the time period of criminal activity described through the date of seizure.

## II. PROBABLE CAUSE

### A. Specified Unlawful Activities: Identity Theft

10. Based upon the following information, there is probable cause to believe that the contents of the accounts (described above) represents criminally derived property from a specified unlawful activity. Specifically, the funds were derived from knowingly transferring, without lawful authority, a means of identification of another person to the United States, or any department thereof, to steal, conceal, or retain the same with intent to convert the monies to his use or gain in violation of 18 U.S.C. § 1028.

### B. Specified Unlawful Activities: Fraud by Wire

11. Based upon the following information, there is probable cause to believe that without lawful authority the means of identification of another person, a social security number, was electronically transmitted interstate in furtherance of a scheme to defraud in violation of 18

3

U.S.C. § 1343.  Specifically, the fraudulent Schedule K-1s, identified below, were

transmitted electronically interstate in furtherance of a scheme to defraud in violation of 18

U.S.C. § 1343. Furthermore, there is probable cause to believe that the contents of the

accounts (described above) represent proceeds traceable to wire fraud.

**C.  Background:**

12. Hatem D. Kaisi (KAISI) is 47 years old. KAISI is married to Nisreen Alajluni.  KAISI

    resides on Kendrick Crossing Lane, in Louisville, Kentucky.   KAISI acquired this property

    on December 30, 2005 and it has remained his primary residence.  On August 5, 2010,

    KAISI transferred ownership of this property to KAISI, FLP (KAISI Family Limited

    Partnership).

13. In August 2010, partnership documents were filed with the Kentucky Secretary of State's

    Office (KYSOS) establishing Kaisi Family Limited Partnership at Kendrick Crossing Lane,

    Louisville, Kentucky.  Hatem KAISI and Nisreen M. Alailuni are shown as the sole General

    Partners.  On 9/10/2011, KAISI, FLP was administratively dissolved by the KYSOS.

14. In 2009, KAISI pled guilty to structuring currency deposits to evade reporting requirements

    in violation of Title 31 USC § 5324.  KAISI was sentenced to one year of probation.

15. KAISI represents and/or owns or operates multiple used car dealerships in Louisville,

    Kentucky. KAISI's known used car dealerships are Automax Car Sales, LLC; Automax of

    Louisville Supercenter; Automax of Louisville Supercenter I; Automax of Louisville

    Supercenter II; Preston Hwy Cars & Trucks, LLC; and Premier Cars and Trucks.

16. In January 2004, incorporation documents were filed with the Kentucky Secretary of State's

    Office (KYSOS) establishing Automax Car Sales, LLC (Automax) at Kendrick Crossing

    Lane, Louisville, Kentucky. These documents list KAISI as the only member. In July 2005, a

certificate to do business under the assumed name Automax of Louisville Super Center at 7101 Preston Highway, Louisville, Kentucky 40219 was adopted for Automax and filed with the KYSOS. In May 2008, a certificate to do business under the assumed name Premier Cars & Trucks 1 at 7318 Preston Highway, Louisville, Kentucky 40219 was adopted for Automax and filed with the KYSOS. In September 2011, Automax was administratively dissolved by the KYSOS.

17. In August 2010, incorporation documents were filed with the KYSOS establishing Preston Hwy Cars & Trucks, LLC (PHCT) at Kendrick Crossing Lane, Louisville, KY. These documents list KAISI as the only member. In November 2010, a certificate to do business under the assumed name Automax of Louisville Supercenter II at Kendrick Crossing Lane, Louisville, KY was adopted for PHCT and filed with the KYSOS. In January 2013, a certificate to do business under assumed name Automax of Louisville Supercenter I at Kendrick Crossing Lane, Louisville, Kentucky, was adopted for PHCT and filed with the KYSOS. In September 2013, PHCT was administratively dissolved by the KYSOS.

18. In June 2014, incorporation documents were filed with the KYSOS establishing Sea Hors, LLC (Sea Hors) at 5904 Preston Highway, Louisville, Kentucky 40219. These documents list Nisreen Ajlouni as the only member. In June 2014, a certificate to do business under the assumed name Automax of Louisville Supercenter II at 5904 Preston Highway, Louisville, Kentucky 40219 was adopted for Sea Hors and filed with the KYSOS. In October 2015, an amendment was filed changing the name of Sea Hors, LLC to Seahorse, LLC (Seahorse).  In October 2015, a certificate to do business under the assumed name Automax of Louisville Supercenter I at 5904 Preston Highway, Louisville, Kentucky 40219 was adopted for Seahorse and filed with the KYSOS.

19. 5904 Preston Highway, Louisville, Kentucky was acquired by Automax Car Sales, LLC on July 30, 2010. On August 5, 2010, KAISI transferred ownership of this property to KAISI, FLP. From acquisition to the present, the mailing address for the property has remained his residence on Kendrick Crossing Lane, Louisville, Kentucky.

20. In October 2015, a certificate to do business under assumed name Automax of Louisville Supercenter I at 5904 Preston Highway, Louisville, Kentucky 40219 was adopted for Seahorse and filed with the KYSOS. This company is listed as "Active" with KYSOS.

21. John Isaacs (Isaacs) resides on Dixon Park Blvd, Louisville, Kentucky. Isaacs has been the registered owner of John Isaacs & Associates located at 2303 Hurstbourne Village Drive, Suite 1000, Louisville, Kentucky 40299 since at least 2005. All federal tax returns and Schedules K-1 filed by Isaacs relating to KAISI or KAISI's various businesses were filed electronically using the Electronic Filing Number Identification number (EFIN) registered to Isaacs, the number known to Affiant but omitted here.

22. A Schedule K-1 (Form 1065) (K-1) is a form authorized by the Department of the Treasury Internal Revenue Service (IRS) or the S corporation to file identifying the shareholders (partners) and each shareholder's share of income, losses, deductions and credits.

23. A Subchapter S (S corporation) is a type of corporation that meets the Internal Revenue Service requirements to be taxed under Subchapter S of the Internal Revenue Code. An S corporation pays no income tax. All income or losses of the corporation are passed through to the shareholders (partners), who report them on their individual returns. Each year, the corporation files a return, listing all of its income, expenses, depreciation, and K-1s to identify the shareholders (partners) and their share of income.

24. IP is a commonly used abbreviation for internet protocol.  The internet protocol is the method or protocol by which data is sent from one computer to another on the internet.

25. An IP address is a unique string of formatted numbers that identifies each computer on the internet at a specific date and time.

26. An Electronic Filing Identification Number (EFIN) is a singular and unique number assigned by the Internal Revenue Service (IRS) to tax preparers that are accepted into the federal and state electronic file program.

27. Form 1120S is the Department of Treasury Internal Revenue Service U. S. Income Tax Return form for an S Corporation.

28. Fifth Third Bank is a financial institution as defined within 31 U.S.C. § 5312(a)(2).

### D.  <u>Facts and Circumstances Supporting Probable Cause:</u>

29. On June 5, 2015, A.A. was interviewed and provided information to federal investigators. The following subparagraphs recite some of the information provided:

   a.  A.A.is related to KAISI.

   b.  In approximately January of 2014, A.A. received a notice from the IRS stating that spouse of A.A.had an approximate $15,000 tax balance due from income earned in 2007, 2008, and 2009. The IRS notice was a surprise to A.A. and spouse due to the fact they did not live in the United States during those years or earn any income in the United States. They suspected the notices had to do with KAISI's car sales business, Automax of Louisville Supercenter II (Automax Supercenter II).

   c.  In approximately June or July of 2014, A.A. and spouse received another tax notice from the IRS with 2010 and 2011 years added with an updated tax balance of approximately $30,000. A.A. and spouse did not live in the United States or earn any income in the

United States in 2010 and 2011. Spouse has never received any payment or income from

KAISI or from Automax Supercenter II. Spouse never worked at Automax Supercenter II

or invested any money into KAISI's business. Spouse has never been a partner in

KAISI's businesses (note that in a later interview of Spouse, Spouse confirmed above

except that she may have been aware of being listed a shareholder in various businesses).

d. A.A. confronted KAISI and KAISI's accountant Isaacs on the IRS tax notices. KAISI

promised A.A. multiple times and even agreed to write a check to pay a portion of the tax

balance to correct the IRS tax issue. However, at the time of the interview, the IRS tax

issue was not resolved (note that in a later interview of A.A.'s spouse, A.A.'s spouse

stated after multiple attempts and many months of trying to get KAISI to pay the tax

balance, KAISI paid the tax balance in full). A.A. suspects that KAISI is using his family

member's information in some sort of scheme related to Automax Supercenter II.

e. The spouse (initials only) appears on the second chart shown below.

30. On February 12, 2016, A.M. was interviewed and provided information to federal

investigators. The following subparagraphs recite some of the information provided:

a. A.M. was employed by Automax of Louisville (Automax) in 2008 and 2009. A.M. sold

vehicles on the car lot, transported vehicles to the mechanic for repairs, transported

vehicles to auctions, bought cars on behalf of Automax, and performed other

miscellaneous duties.

b. A.M. was only an employee of Automax. A.M. was never an owner or partner with

KAISI in Automax. A.M. never invested or loaned KAISI or Automax money. Neither

A.M.'s spouse nor children are owners or partners in Automax. One A.M.'s sons started

working for Automax in May or June of 2015. None of A.M.'s other children have worked at Automax.

c.  When A.M. was working at Automax in 2008, KAISI wanted A.M.to use the services of KAISI's bookeeper, John Isaacs (Isaacs), to have A.M.'s 2008 taxes prepared. A.M. gave Isaacs his personal information, including all the personal information for his children. A.M.did not use the services of Isaacs, because Isaacs' fees were too expensive.

d.  A.M. has had ongoing problems with the IRS starting in 2011. A.M. tried to file a federal tax return in 2011 and was notified he owed $11,000 in overdue taxes. A.M. went to his accountant, not Isaacs, to get assistance in solving his IRS issues. A.M.'s accountant told A.M. he had $35,000 in unreported income. Due to this ongoing IRS issue, A.M.'s accountant has instructed A.M.to take copies of his 2011, 2012, and 2013 federal tax returns to the local IRS office due to the possibility of A.M. being a victim of identity theft. In addition, A.M.'s accountant provided a signed letter stating he believes A.M. was a victim of identity theft.

e.  A.M. reviewed several Schedule K-1s, from 2009 thru 2013, from Automax and PHCT. A.M. did not work for Automax or PHCT in 2010, 2011, 2012, and 2013. A.M. was not aware of any Schedule K-1s filed on his behalf.

f.  A.M. reviewed his 2012 federal tax return prepared by Isaacs and filed with the IRS. A.M. did not know why there was $6,000 in income from sales from a business address at  Kendrick Crossing Lane. In addition, A.M. did not know why there was $32,126 in income from S Corp PHCT listed on his 2012 federal tax return. A.M. did not receive any income from PHCT in 2012. A.M. did not authorize the filing of his 2012 federal tax return or use the services of Isaacs to prepare his 2012 federal tax return.

g. A.M. reviewed several Schedule K-1s from 2012 and 2013 from PHCT for his children. A.M.'s two sons and two daughters received no income and were not owners or partners in PHCT in 2012 and 2013. A.M. never authorized KAISI or Issacs to use his personal information or his children's personal information, for any purpose, including the creation and submission of a Schedule K-1s from PHCT or to create and submit federal tax returns.

h. A.M. reviewed his son's 2012 and 2013 federal tax returns. A.M. did not know why there was $10,707 and $10,067 in income from S Corp PHCT listed on his son's 2012 and 2013 federal tax returns, respectively. A.M. never authorized KAISI or Issacs to create and submit 2012 and 2013 federal tax returns for his son.

i. A.M. reviewed a second son's 2012 and 2013 federal tax returns. A.M. did not know why there was $10,707 and $10,067 in income from S Corp PHCT listed on this other son's 2012 and 2013 federal tax returns, respectively. A.M. never authorized KAISI or Issacs to create and submit 2012 and 2013 federal tax returns for this second son.

j. A.M. reviewed his daughters 2012 and 2013 federal tax returns. A.M. did not know why there was $10,707 and $10,067 in income from S Corp PHCT listed on this daughter's 2012 and 2013 federal tax returns, respectively. A.M. never authorized KAISI or Issacs to create and submit 2012 and 2013 federal tax returns for this daughter.

k. A.M. reviewed a second daughter's 2012 and 2013 federal tax returns. A.M. did not know why there was $10,707 and $10,067 in income from S Corp PHCT listed on this daughter's 2012 and 2013 federal tax returns, respectively. A.M. never authorized KAISI or Issacs to create and submit 2012 and 2013 federal tax returns for this second daughter.

31. A.M.'s four children (initials only) appear on the second chart shown below.

32. An analysis of KAISI's personal tax returns and the corporate returns of Automax and PHCT for tax years 2009 thru 2014, along with the Schedules K-1 filed for Automax and PHCT showed a separate Schedule K-1 was electronically sent for each of the individuals identified in the chart below.  Each Schedule K-1 electronically sent by Issacs to the IRS for Automax and PHCT were for tax years 2009 thru 2014.  Each Schedule K-1 contained the social security number of an individual alleged to be a partner (shareholder).  The individuals are identified by initials only on the chart below.  Investigation conducted by the Federal Bureau of Investigation (FBI) and the Internal Revenue Service (IRS) determined that KAISI was the sole owner of Automax and/or PHCT and none of the individuals identified on the charts below were partners.

33. The Schedules K-1 containing the social security number of an individual alleged to be a partner (shareholder) were for the tax years 2009 thru 2014.  Those Schedules K-1 were transmitted to the IRS beginning on July 20, 2011 and continuing thru September 24, 2015, as set forth on the second chart shown below.

34. For the calendar years 2011 through 2015, all electronically filed business and partnership tax returns, including Schedules K-1, were routed by the IRS through various locations ultimately ending in Ogden, Utah for processing.

35. For the calendar years 2011 through 2015, all electronically filed personal tax returns, including Schedules K-1, were routed by the IRS to Kansas City, Missouri for processing.

36. An analysis of KAISI's personal tax returns and the corporate returns of Automax and PHCT along with the Schedules K-1 filed for Automax and PHCT, showed KAISI did not report at least $1,568,309 in flow-through income from his corporate returns.  KAISI derived the benefit at the moment when Issacs submitted the Automax and PHCT corporate tax returns,

which were accompanied by the fraudulent K-1s. Those acts shifted income from himself to those individuals. KAISI benefited by not being liable for the tax associated with the total earned income from the businesses. Those individuals were identified by federal investigators as KAISI family members, individuals who worked at KAISI's various businesses, and children of individuals who worked at KAISI's various businesses. $1,568,309 is the sum total of income shown on the K-1 Schedules filed for Automax and PHCT for tax years 2009 thru 2014 for individuals other than KAISI. The first table below shows the net partnership income on each of Schedules K-1 electronically reported to the IRS for tax years 2009 thru 2014 for individuals other than KAISI.

37. An analysis of two personal checking accounts belonging to KAISI and thirteen business checking accounts controlled by KAISI, in the names of Automax of Louisville, Preston Hwy Cars & Trucks, Sea Hors LLC and Sea Hors Automax of Louisville, obtained by valid legal process from JPMorgan Chase Bank NA, Republic Bank and Fifth Third Bank, going back to December 12, 2008 found no payments to any of the individuals identified in the second chart shown below that directly or indirectly correspond to the alleged partnership distributions (K-1 Amount) identified in the first chart shown below.

38. An analysis of KAISI's personal tax returns and the corporate returns of Automax and PHCT along with the Schedules K-1 filed for Automax and PHCT, showed a total net benefit (proceeds) to KAISI of $348,095. The total net benefit (proceeds) to KAISI is shown in the chart below. When computing his total net benefit (proceeds), the IRS used the actual figures shown on KAISI's personal and corporate tax returns and only changed the S Corporation figures from what KAISI reported for himself as shareholder's income to what it would have been had the fraudulent Schedule K-1s not been submitted to the IRS.

| Name | 2009 K-1 Amount | 2010 K-1 Amount | 2011 K-1 Amount | 2012 K-1 Amount | 2013 K-1 Amount | 2014 K-1 Amount |
|---|---|---|---|---|---|---|
| D.K. | $23,718 | $24,730 | $25,258 | $17,845 | $16,778 | $20,992 |
| E.K. | $23,718 | $24,730 | $25,258 | | | |
| N.K. | $11,859 | $12,365 | $12,629 | $17,845 | $20,134 | $25,191 |
| G.K. | $11,859 | $12,365 | $12,629 | $17,845 | $20,134 | $25,191 |
| R.K. | $11,859 | $12,365 | $12,629 | $17,845 | $20,134 | $25,191 |
| A.S. | $23,718 | $6,182 | $6,315 | $12,492 | $16,778 | $20,992 |
| N.K. | $23,718 | $49,459 | $50,516 | $17,845 | $20,134 | $25,191 |
| D. S. | $23,718 | | $25,258 | $14,276 | | |
| K.W. | $23,718 | | | | | |
| S.S. | $11,859 | $6,182 | $6,315 | $12,492 | $16,778 | $20,992 |
| A.M. | $11,859 | $12,365 | $12,629 | $32,126 | $20,134 | |
| A.K. | $11,859 | $12,365 | $12,629 | $17,845 | $20,134 | $25,191 |
| M.A. | | | | $24,983 | | |
| F.K. | | | | $17,845 | $20,134 | $25,191 |
| M.B. | | | | $24,983 | $30,200 | $41,984 |
| S.I. | | | | $7,138 | $6,711 | $8,397 |
| S.I. | | | | $7,138 | $6,711 | $8,397 |
| O.I. | | | | $7,138 | $6,711 | $8,397 |
| S.I. | | | | $7,138 | $6,711 | $8,397 |
| F.B. | | | | $10,707 | $10,067 | $12,595 |
| M.I. | | | | $10,707 | $10,067 | $12,595 |
| F.I. | | | | $10,707 | $10,067 | $12,595 |
| F.I. | | | | $10,707 | $10,067 | $12,595 |
| I.I. | | | | $10,707 | $10,067 | $12,595 |
| **Net Total Income on K-1s** | $213,462 | $173,108 | $202,065 | $328,354 | $298,651 | $352,669 |
| **Total Net Benefit to Hatem Kaisi** | $44,318 | $32,852 | $39,090 | $81,275 | $70,258 | $80,302 |

39. For tax years 2009 and 2010, Forms 1120S and Schedules K-1 were filed for Automax Car

Sales, LLC listing KAISI as a 10% and 20% owner, respectively. For tax years 2011 thru

2014, Forms 1120S or Schedules K-1 were filed for Preston Hwy Cars & Trucks, LLC listing

KAISI as a 20%, 8%, 11%, and 14% owner, respectively. Additional Schedules K-1 were

attached to the 2009 thru 2014 Forms 1120S for KAISI's businesses. The additional Schedules K-1s were for KAISI's family members, individuals who worked at KAISI's various businesses, and children of individuals who worked at KAISI's various businesses. Eleven of the twenty-five Schedules K-1 filed in 2009 thru 2014 listed Kendrick Crossing Lane, Louisville, Kentucky, as the address for the alleged shareholder. The corporate returns or Schedules K-1 were all prepared by John Isaacs doing business as John Issacs & Associates, LLC with the address 2303 Hurstbourne Village Drive, Suite 1, Louisville, Kentucky 40299.

40. An analysis of KAISI's personal tax returns and the corporate returns of Automax Car Sales, LLC and Preston Hwy Cars & Trucks, LLC, along with the Schedules K-1 filed for those entities showed the Schedule K-1s were electronically filed on the dates set forth in the chart below.

| Name | 2009 K-1 Filed on | 2010 K-1 Filed on | 2011 K-1 Filed on | 2012 K-1 Filed on | 2013 K-1 Filed on | 2014 K-1 Filed on |
|---|---|---|---|---|---|---|
| D.K. | 7/20/2011 | 3/2/2012 | 9/27/2012 | 9/26/2013 | 9/25/2014 | 9/24/2015 |
| E.K. | 7/20/2011 | 3/2/2012 | 9/27/2012 | | | |
| N.K. | 7/20/2011 | 3/2/2012 | 9/27/2012 | 9/26/2013 | 9/25/2014 | 9/24/2015 |
| G.K. | 7/20/2011 | 3/2/2012 | 9/27/2012 | 9/26/2013 | 9/25/2014 | 9/24/2015 |
| R.K. | 7/20/2011 | 3/2/2012 | 9/27/2012 | 9/26/2013 | 9/25/2014 | 9/24/2015 |
| A.S. | 7/20/2011 | 3/2/2012 | 9/27/2012 | 9/26/2013 | 9/25/2014 | 9/24/2015 |
| N.K. | 7/20/2011 | 3/2/2012 | 9/27/2012 | 9/26/2013 | 9/25/2014 | 9/24/2015 |
| D. S. | 7/20/2011 | | 9/27/2012 | 9/26/2013 | | |
| K.W. | 7/20/2011 | | | | | |
| S.S. | 7/20/2011 | 3/2/2012 | 9/27/2012 | 9/26/2013 | 9/25/2014 | 9/24/2015 |
| A.M. | 7/20/2011 | 3/2/2012 | 9/27/2012 | 9/26/2013 | 9/25/2014 | |
| A.K. | 7/20/2011 | 3/2/2012 | 9/27/2012 | 9/26/2013 | 9/25/2014 | 9/24/2015 |
| M.A. | | | | 9/26/2013 | 9/25/2014 | |
| F.K. | | | | 9/26/2013 | 9/25/2014 | 9/24/2015 |
| M.B. | | | | 10/24/2013 | 9/25/2014 | 9/24/2015 |

| | | | | | | |
|---|---|---|---|---|---|---|
| S.I. | | | | 10/24/2013 | 9/25/2014 | 9/24/2015 |
| S.I. | | | | 10/24/2013 | 9/25/2014 | 9/24/2015 |
| O.I. | | | | 10/24/2013 | 9/25/2014 | 9/24/2015 |
| S.I. | | | | 10/24/2013 | 9/25/2014 | 9/24/2015 |
| F.B. | | | | 10/24/2013 | 9/25/2014 | 9/24/2015 |
| M.I. | | | | 10/24/2013 | 9/25/2014 | 9/24/2015 |
| F.I. | | | | 10/24/2013 | 9/25/2014 | 9/24/2015 |
| F.I. | | | | 10/24/2013 | 9/25/2014 | 9/24/2015 |
| I.I. | | | | 10/24/2013 | 9/25/2014 | 9/24/2015 |
| **Net Total Income on K-1s** | $213,462 | $173,108 | $202,065 | $328,354 | $298,651 | $352,669 |
| **Total Net Benefit to Hatem Kaisi** | $44,318 | $32,852 | $39,090 | $81,275 | $70,258 | $80,302 |

## E. Proceeds of Specified Unlawful Activities

41. In September of 2016, Fifth Third Bank account 5515, in the name of Sea Hors Automax of Louisville Supercenter II, held $44,318.00 of the net benefit (criminal proceeds) obtained from the scheme outlined above.  As of May 31, 2016, the balance in this account was $231,521.76.  As of September 19, 2016, the account balance exceeded $44,318.00.

  a.  On July 20, 2011, twelve Schedule K-1s described above were electronically transmitted to the IRS for the 2009 tax year.  At the time of transmittal, KAISI had a business checking account at Fifth Third Bank in the name of Auto Max of Louisville Supercenter LLC, account number xxxx-xx-6453.  At that time, the balance in the account was $113,561.83.  As the above chart shows, the net benefit (proceeds) to KAISI for the 2009 tax year was $44,318.

  b.  From July 20, 2011 until account #6453 was closed on November 18, 2011 the balance in the account never fell below $44,318, which is the net benefit (proceeds) to KAISI.

15

   c.  On November 18, 2011, KAISI closed account #6453 by transferring $62,057 to a business checking account controlled by KAISI at Fifth Third Bank in the name of Preston Hwy Cars & Truck, LLC account number xxxx-xx-2141. This was the opening deposit for that account. The $62,057 transferred to account #2141 contained the $44,318 in net benefit (proceeds).

   d.  From November 18, 2011 until August 28, 2015 the balance in account #2141 never fell below $44,318, which is the net benefit (proceeds) to KAISI.

   e.  On August 28, 2015, KAISI opened a business money market at Fifth Third Bank in the name of Sea Hors Automax of Louisville Supercenter II account number 5515. KAISI and Nisreen Kaisi are the only two signers on the account. On August 28, 2015, KAISI transferred $165,904.21 from account #2141 to account #5515. This was the opening deposit for account #5515. The $165,904.21 transferred to account #5515 contained the $44,318 in net benefit (proceeds).

   f.  From August 28, 2015 until present (confirmed September 19, 2016), the balance in account #5515 has not fallen below $44,318, which is the net benefit (proceeds) to KAISI.

42. In September of 2016, Fifth Third Bank account 5507, in the name of Sea Hors Automax of Louisville Supercenter II, held $303,777 of the net benefit (criminal proceeds) obtained from the scheme outlined above. As of May 31, 2016, the balance in this account was $944,640.47. As of September 19, 2016, the account balance exceeded $303,777.00.

   a.  On November 18, 2011, KAISI closed account #6453 by transferring $62,058.40 to a business checking account controlled by KAISI at Fifth Third Bank in the name of

Preston Hwy Cars & Truck, LLC dba Automax of Louisville Supercenter II account number xxxx-xx-5381. This was the opening deposit for account #5381.

b. On March 2, 2012, ten Schedule K-1s described above were electronically transmitted to the IRS for the 2010 tax year. At that time, the balance in account #5381 was $70,985.74. As the above chart shows, the net benefit (proceeds) to KAISI for the 2010 tax year was $32,852.

c. From March 2, 2012 until September 27, 2012 the balance in account #5381 never fell below $32,852, which is the net benefit (proceeds) to KAISI.

d. On September 27, 2012, eleven Schedule K-1s described above were electronically transmitted to the IRS for the 2011 tax year. At that time, the balance in account #5381 was $118,725.86. As the above chart shows, the net benefit (proceeds) to KAISI for the 2011 tax year was $39,090.

e. As the above chart shows, the combined net benefit (proceeds) to KAISI for tax years 2010 and 2011 now totaled $71,942 ($32,852 and $39,090).

f. From September 27, 2012 until September 26, 2013 the balance in account #5381 never fell below $71,942, which is the net benefit (proceeds) to KAISI.

g. On September 26, 2013, twelve Schedule K-1s described above were electronically transmitted to the IRS for the 2012 tax year. At that time, the balance in account #5381 was $445,457.33. As the above chart shows, the net benefit (proceeds) to KAISI for the 2012 tax year was $81,275.

h. On October 24, 2013, ten Schedule K-1s described above were electronically transmitted to the IRS for the 2012 tax year. At that time, the balance in account

17

#5381 was $471,060.73.  As the above chart shows, the net benefit (proceeds) to

KAISI for the 2012 tax year was $81,275.

i.  As the above chart shows, the combined net benefit (proceeds) to KAISI for tax years

2010, 2011 and 2012 now totaled $153,217 ($32,852 plus $39,090 plus $81,275).

j.  From September 26, 2013 until September 25, 2014 the balance in account #5381

never fell below $153,217, which is the net benefit (proceeds) to KAISI.

k.  On September 25, 2014, twenty-one Schedule K-1s described above were

electronically transmitted to the IRS for the 2013 tax year.  At that time, the balance

in account #5381 was $767,657.97.  As the above chart shows, the net benefit

(proceeds) to KAISI for the 2013 tax year was $70,258.

l.  As the above chart shows, the combined net benefit (proceeds) to KAISI for tax years

2010, 2011, 2012 and 2013 now totaled $223,475 ($32,852 plus $39,090 plus

$81,275 plus $70,258).

m.  From September 25, 2014 until August 28, 2015 the balance in account #5381 never

fell below $223,575, which is the net benefit (proceeds) to KAISI.

n.  On August 28, 2015, KAISI opened a business checking account at Fifth Third Bank

in the name of Sea Hors LLC Automax of Louisville Supercenter II account number

5507.  KAISI and Nisreen Kaisi are the only signers on the account.  On August 28,

2015, KAISI transferred $900,000 from account #5381 to account #5507.  This was

the opening deposit for account #5507.  The $900,000 transferred to account #5507

contained the $223,475 in net benefit (proceeds).

o.  From August 28, 2015 until September 24, 2015 the balance in account #5507 never

fell below $223,475, which is the net benefit (proceeds) to KAISI.

18

p. On September 24, 2015, nineteen Schedule K-1s described above were electronically transmitted to the IRS for the 2014 tax year. At that time, the balance in account #5507 was $940,141.01. As the above chart shows, the net benefit (proceeds) to KAISI for the 2014 tax year was $80,302.

q. As the above chart shows, the combined net benefit (proceeds) to KAISI for tax years 2010, 2011, 2012, 2013 and 2014 now totaled $303,777 ($32,852 plus $39,090 plus $81,275 plus $70,258 plus $80,302).

r. From September 24, 2015 until present (confirmed September 19, 2016), the balance in account #5507 has not fallen below $303,777, which is the net benefit (proceeds) to KAISI.

43. Affiant obtained a federal seizure warrant and or about September 21, 2016, seized the contents of the Fifth Third Accounts ending 5515 (no more than $44,318.00) and 5507 (no more than $303,777.00).

### III.     CONCLUSION of PROBABLE CAUSE

44. Based upon the above-stated facts, there is probable cause to believe that the following assets represent proceeds traceable to one or more violations of 18 U.S.C. §§ 1028 and 1343. Consequently, this property is subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C):

a. Contents of checking account number 5515 ($44,318.00), held at Fifth Third Bank.

b. Contents of checking account number 5507 ($303,777.00), held at Fifth Third Bank.

Special Agent Andrew M. Phillips

Federal Bureau of Investigation

19

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                         PLAINTIFF

V.                                         CASE ACTION NO: <u>3:19-cv-180-CHB</u>
                                                           *Electronically filed*

CONTENTS OF ACCOUNT ENDING 5515
IN THE NAME OF SEA HORS LLC AUTOMAX
OF LOUISVILLE SUPERCENTER II,
HELD BY FIFTH THIRD BANK,
1841 BLANKENBAKER PARKWAY,
LOUISVILLLE, KY ($44,318.00)

CONTENTS OF ACCOUNT ENDING 5507
IN THE NAME OF SEA HORS LLC AUTOMAX
OF LOUISVILLE SUPERCENTER II,
HELD BY FIFTH THIRD BANK,
1841 BLANKENBAKER PARKWAY,
LOUISVILLLE, KY ($303,777.00)                                   DEFENDANTS

## WARRANT OF ARREST *IN REM* AND NOTICE

TO:    THE UNITED STATES MARSHALS SERVICE
       AND/OR ANY OTHER DULY AUTHORIZED LAW
       ENFORCEMENT OFFICER:

WHEREAS the United States Attorney for the Western District of Kentucky has filed a

Verified Complaint for Forfeiture *In Rem* against the above-named defendant property on the

14th day of March, 2019, alleging that the defendant property is subject to seizure and forfeiture

to the United States pursuant to 21 U.S.C. § 881(a)(6).

And, the Court being satisfied that, based on the Verified Complaint for Forfeiture *In

Rem*, there is probable cause to believe that the defendant property so described therein

constitutes property that is subject to forfeiture for such violations, and that grounds for issuance

of a Warrant of Arrest *In Rem* exist, pursuant to Supplemental Rule G(3) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules");

YOU ARE THEREFORE ORDERED to seize and arrest the defendant property, and to take the defendant property into your possession for safe custody, until further order of the Court; and to make your return as provided by law.

YOU ARE FURTHER ORDERED to send notice to the record owner and any other person believed to have a claim to or interest in the defendant property a copy of the Complaint, Notice of Forfeiture, and this Warrant in a manner consistent with the principles of service of process of any action *in rem* under the Supplemental Rules and the Federal Rules of Civil Procedure, within a reasonable time of seizure, and, to admonish any persons holding a claim to the defendant property to file their claims with the Clerk of this Court within thirty-five (35) days after execution of this process, and to serve their answers within twenty-one (21) days after filing their claims, and finally, that they must serve a copy of any claim and/or pleading upon the Assistant United States Attorney, Amy M. Sullivan, 717 West Broadway, Louisville, Kentucky 40202.

YOU ARE FURTHER ORDERED, in the event that the defendant property is not released within ten (10) days of execution of process, that you shall cause publication of public notice, as required by Rule G(4) of the Supplemental Rules.  Such notice shall be published for thirty days at www.forfeiture.gov.   This notice shall state that anyone claiming an interest in the defendant property must file: 1) a claim within sixty (60) days from the start of the publication on the internet at www.forfeiture.gov; and 2) an answer within twenty-one (21) days after filing a claim.

IT IS FURTHER ORDERED that, promptly after execution of this process, you shall file the same in this Court with your return thereon, identifying the individuals upon whom copies were served and the manner employed.

Tendered by:
Amy M. Sullivan
Assistant United States Attorney
717 West Broadway
Louisville, KY 40202
(502) 582-5911
(502 )582-5097(fax)
amy.sullivan@usdoj.gov

cc:     United States Attorney (AMS) - two certified copies of order and
        two certified copies of the Verified Complaint

℘JS 44   (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)   PLAINTIFFS

UNITED STATES OF AMERICA

**DEFENDANTS**

CONTENTS OF ACCOUNT ENDING 5515 IN THE NAME OF SEA HORS LLC AUTOMAX OF LOUISVILLE SUPERCENTER II,  ET AL.

**(b)**   County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)**   Attorney's (Firm Name, Address, and Telephone Number)

Attorneys(If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☒ 1   U.S. Government
Plaintiff

☐ 2   U.S. Government
Defendant

☐ 3   Federal Question
(U.S. Government Not a Party)

☐ 4   Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☒ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **LABOR** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | | ☐ 710 Fair Labor Standards Act | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 865 RSI (405(g)) | ☐ 893  Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN   (Place an "X" in One Box Only)

☒ 1   Original Proceeding

☐ 2   Removed from State Court

☐ 3   Remanded from Appellate Court

☐ 4   Reinstated or Reopened

☐ 5   Transferred from another district (specify)

☐ 6   Multidistrict Litigation

☐ 7   Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
18 U.S.C. 981(a)(1)(C)
Brief description of cause:
wire fraud and identity theft seizure of property

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE
3/14/19

SIGNATURE OF ATTORNEY OF RECORD
Amy M. Sullivan    Digitally signed by Amy M. Sullivan
Date: 2019.03.14 10:46:15 -04'00'

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.    (a) Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

    (b) County of Residence.  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

    (c) Attorneys.  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.    Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.

United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; federal question actions take precedence over diversity cases.)

**III.    Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.    Nature of Suit.**  Place an "X" in the appropriate box.  If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit.  If the cause fits more than one nature of suit, select the most definitive.

**V.    Origin.**  Place an "X" in one of the seven boxes.

Original Proceedings.  (1) Cases which originate in the United States district courts.

Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.

Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.

Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.

Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.  When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment.  (7) Check this box for an appeal from a magistrate judge's decision.

**VI.    Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity**.    Example:    U.S. Civil Statute: 47 USC 553
                                            Brief Description: Unauthorized reception of cable service

**VII.    Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand.  In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.    Related Cases.**  This section of the JS 44 is used to reference related pending cases if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature**.  Date and sign the civil cover sheet.